# Docket No. 20-15085

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

DIAMOND SJ ENTERPRISE, INC.,

*Plaintiff-Appellant,*

v.

CITY OF SAN JOSE,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Northern District of California,
No. 5:18-cv-01353-LHK · Honorable Lucy H. Koh*

## APPELLANT'S PETITION FOR REHEARING
## AND/OR REHEARING *EN BANC*

D. GILL SPERLEIN, ESQ.
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
(415) 404-6615 Telephone
(415) 404-6616 Facsimile
*Attorneys for Appellant Diamond SJ Enterprise, Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................4

II. STATEMENT OF THE CASE .....................................................6

   A. FACTUAL BACKGROUND ....................................................6

   B. PROCEDURAL BACKGROUND ..............................................7

III. ARGUMENT. ........................................................................10

   A. THE MAJORITY FAILED TO ADDRESS ONE OF THE QUESTIONS DIAMOND

PRESENTED. ............................................................................10

   B. THE MAJORITY OPINION SUBSTANTIALLY NARROWS THE UNFETTERED

DISCRETION DOCTRINE. .............................................................11

     1. The Majority Failed to Acknowledge the Risk of Self-Censorship. .........12

     2. The Majority Failed to Acknowledge That San Jose's Live Entertainment
Licensing Scheme Is a Prior Restraint or That Prior Restraints Are Presumed
Unconstitutional. ......................................................................13

     3. The Majority Misunderstood the Role Public Nuisance Law Plays in San
Jose's Licensing Scheme. ..............................................................14

     4. The Panel misunderstands the effectiveness of a savings clause. .............17

     5. Requiring Government Officials to Provide a Written Decision Does Not
Cure the Problems Caused by Unfettered Discretion. ......................................19

IV. CONCLUSION ........................................................................21

# TABLE OF AUTHORITIES

## CASES

*Am. Entertainers, LLC v. City of Rocky Mount.*, 888 F.3d 707 (4th Cir. 2018) ----- 4

*Ass'n of Cmty. Orgs. for Reform Now v. Golden*, 744 F.2d 739 (10th Cir. 1984) --- 4

*Battle v. City of Seattle*, 89 F. Supp. 3d 1092 (W.D. Wash. 2015) ------------------ 18

*CISPES (Committee in Solidarity with People of El Salvador) v. FBI*, 770 F.2d 468 (5th Cir. 1985) -------------------------------------------------------------------------- 19

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988)--------- 4, 11, 19

*Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) --------------------------------------------------------------------------------------- 4

*England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)---------------------- 7

*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992)------------- 4, 12, 13, 17

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012)--------------------------- 4, 11, 14

*Lady J Lingerie v. City of Jacksonville,* 176 F.3d 1358 (11th Cir. 1999)-------- 4, 11

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009) -------------------------------------------------------------------------------------- 11

*Long v. Texas*, 931 S.W.2d 285 (Tex. Crim. App. 1996)----------------------------- 19

*Miami Herald Pub. Co. v. Hallandale*, 734 F.2d 666 (11th Cir. 1984)------------- 16

*People ex rel. Gallo v. Acuna*, 929 P.2d 596 (Cal. 1997)----------------------------- 14

*People v. Aguilar-Benegas*, 2021 Cal. Super. LEXIS 153907 ----------------------- 15

*People v. Lim*, 18 Cal. 2d 872 (1941) ------------------------------------------------- 16

*Redevelopment Agency v. BNSF Ry.*, 643 F.3d 668 (9th Cir. 2011) --------------- 15

*Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147 (1969) --------------------- 4

*Southworth v. Bd. of Regents of the Univ. of Wis. Sys.*, 307 F.3d 566 (7th Cir. 2002) ------------------------------------------------------------------------------------ 4, 19

*Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180 (9th Cir. 2022) ----------- 4

## STATUTES

42 U.S.C. §1983 ---------------------------------------------------------------------------- 7

California Civil Code § 3479 ---------------------------------------------------- 14, 15, 16

California Civil Code § 3480 ---------------------------------------------------- 14, 15, 16

Plaintiff-Appellant Diamond SJ Entertainment (Diamond) seeks a panel rehearing and/or rehearing *en banc* because the panel's decision conflicts with the Supreme Court's decisions in *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 151 (1969), *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988), *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992), and other cases; prior Ninth Circuit cases including, *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996), *Kaahumanu v. Hawaii*, 682 F.3d 789, 802 (9th Cir. 2012), and recently decided *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1192 (9th Cir. 2022); and decisions of other federal courts of appeal including, *Am. Entertainers, LLC v. City of Rocky Mount.*, 888 F.3d 707, 702 (4th Cir. 2018), *Southworth v. Bd. of Regents of the Univ. of Wis. Sys.*, 307 F.3d 566, 592 (7th Cir. 2002); *Ass'n of Cmty. Orgs. for Reform Now v. Golden*, 744 F.2d 739, 747 (10th Cir. 1984), *Lady J Lingerie v. City of Jacksonville,* 176 F.3d 1358 (11th Cir. 1999), and others.

The majority's misapplication of the law substantially affects a rule of national application in which there is an overriding need for national uniformity.

## I.  Introduction

After San Jose suspended its live entertainment license, Diamond brought an action in District Court challenging provisions of the City's live entertainment

permitting scheme on both as-applied and facial grounds under the First Amendment, Procedural Due Process, and other grounds.[1] On Defendant's Motion, the Court dismissed Diamond's due process claims and its as-applied and facial prior restraint claims, finding that the challenged provisions did not implicate the First Amendment. Because San Jose did not challenge Plaintiff's First Amendment claims based on overbreadth and vagueness, they survived. San Jose moved for summary judgment on Diamond's remaining claims, which the court granted. The court denied Diamond's motion for partial summary judgment.

Diamond Appealed seeking review of the court's dismissal of Diamond's as-applied and facial prior restraint claims and the court's order on the summary judgment motions.

The Court of Appeal issued an Opinion entering judgment in favor of Appellee and affirming the decision of the District Court. *Diamond S.J. Enter. v. City of San Jose ("Opinion")*, No. 20-15085, 2024 U.S. App. LEXIS 10426 (9th Cir. Apr. 30, 2024).[2] Diamond petitions the Court for rehearing and/or rehearing *en banc*.

---

[1] Diamond only appealed the Court's decisions relating to its First Amendment and due process claims.

[2] This memorandum uses the italicized *Opinion* to refer to the panel's ruling and cites to page numbers found in the Lexis citation for the case.

## II. Statement of the Case

### A. Factual Background

Diamond responsibly and safely operated a live music venue presenting primarily Hip Hop and Rap music for thirteen years. ER-132. In order to present live entertainment, Diamond was required to obtain and maintain an Entertainment Permit. SJMC, Chapter 6.60. On May 28, 2017 Diamond's owner and manager, Jenny Wolfes, had a disagreement with Daniel Embay, the individual through whom she had booked the evening's entertainment. Concerned Embay's double bookings might cause tempers to flare, Wolfes instructed him to leave, canceled the event, and close the doors. ER-136. A limited amount of shoving at the door occurred, but security guards addressed the concerns and dispersed the crowd. ER-136. Embay left the premises but returned at about 1:30 a.m. and discharged a fire arm in a parking lot that SJ Live shared with several businesses.[3] ER-136. The shooting did not result in any injuries. ER-136.

---

[3] The Majority wrote, "[w]hen Wolfes asked Embay to leave, he threatened her, exited the club's back door, went to his car, and got a gun. He fired several shots into the crowd gathered in a shared parking lot behind the club and eventually fled in his car," suggesting that Embay immediately went to his car, retrieved a gun and fired the shots. *Diamond* at *7. However, the shots occurred several hours after the disagreement at the door and appeared to be unrelated to the dispute with management. ER-135-36.

## B.     Procedural Background

**Administrative Action -**

As a result, San Jose issued a notice of intention to revoke Diamond's entertainment permit based on a laundry list of alleged violations. ER-159-167. After an administrative hearing, the violations were reduced to hiring an unlicensed promoter (ER-190-193) and operating a live entertainment venue in a manner that created a public nuisance, and the sanction was reduced to a thirty-day suspension. ER-196-97. Diamond appealed to the Appeals Board which affirmed the suspension based on Diamond's operation as a public nuisance but did not affirm the finding that Diamond had used an unpermitted promoter. ER-201-204.

**State Court -**

Plaintiff filed a Writ of Administrative Mandamus in state court, with an England Reservation to preserve its constitutional claims. ER-309-310. See *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 421 (1964). The court denied the writ, finding the administrative decision was supported by substantial evidence. ER-207.

**Federal Action -**

Plaintiff filed a 42 U.S.C. §1983 action in district court. Diamond's Second Amended Complaint, included facial and as-applied First Amendment challenges to three provisions of San Jose's licensing scheme—6.60.290, 6.60.370(L), and 6.60.383(F)—each of which preclude public entertainment businesses from

operating in a way that causes a public nuisance as defined by local ordinance and state law. The court granted San Jose's motion to dismiss Diamond's prior restraint claims. ER-10-31. Later, the court granted San Jose's motion for summary judgment and denied Diamond's cross motion. ER-49-71. The court found the challenged provisions did not implicate the First Amendment and thus the Court did not consider whether the provisions were vague or overbroad. ER-57-65. The Court also denied Diamond's facial challenge to Chapter 6.62 (the promoter ordinance).

**Appeal -**

Diamond appealed the dismissal of its facial and as-applied prior restraint claims and the court's ruling on the motions for summary judgment. In a 2:1 decision, the Ninth Circuit affirmed.

The Majority held:

- Diamond's facial challenge fails because the nuisance provisions do not confer unbridled discretion on any City official. *Id*. at §III(A)(2) *11-16. Because the provisions did not confer unbridled discretion, the Majority did not decide whether the City's licensing scheme has a nexus to expression. *Id*. at *11

- Because Diamond's facial attack on the Nuisance Provisions as prior restraints fail, its overbreadth and vagueness challenges also fail. *Id*. at §III(B) *16-17.

- Diamond's Procedural Due Process claim fails. *Id*. at §III(C) *17-22.

The Dissent held:

- The City's licensing scheme plainly has a sufficient nexus to expression to invoke First Amendment Protection. *Id*. at §I(B)(1) *23-26.

- The nuisance standard underlying §§ 6.60.290 and 6.60.370(L) is too amorphous to adequately cabin official permitting discretion in the First Amendment context. *Id*. at §I(B)(2) *26-29.

- § 6.60.383(F) may be interpreted by the City as conferring a degree of discretion that is not immediately apparent from its text and summary judgment on that issue should reversed and remanded. *Id*. at §I(C) *29-31.

- Plaintiff does not have standing to challenge Chapter 6.62. *Id*. at §II *21-32.

- The dismissal of the due process claim should be affirmed to the extent that it is based on an allegedly biased decisionmaker, but the dismissal on the pleadings of Diamond's claim that the City arbitrarily withheld

material evidence from Diamond in violation of due process should be reversed. *Id.* at §III *32-34.

Neither opinion addressed Plaintiff's as-applied First Amendment claims.

## III.    Argument.

### A.    The Majority Failed to Address One of the Questions Diamond Presented.

The district court dismissed both Diamond's facial and as-applied prior restraint challenges. ER 10-30. Similarly, the court's grant of summary judgment disposed of as-applied claims. ER 57-65. In both rulings, the court found the provisions did not have a nexus to speech.

Diamond sough review of both of the court's orders and in its opening brief identified the first issue presented as, "[w]hether the district court erred in holding that subsections of a city ordinance regulating live entertainment are not subject to First Amendment protection where compliance with those subsections is required in order to obtain and maintain a license to present live entertainment." Opening Brief at 10. The majority ruled that Diamond's facial challenge of the nuisance provisions failed because the provisions did not confer unbridled discretion. *Opinion* at *12. Therefore, the majority did not address the question of whether the provisions had a sufficient nexus to expressive activity to trigger First Amendment protection. *Id.* at *11. However, even if Diamond's facial challenges fail, the question should have been answered in the affirmative for the reasons Judge

Collins presented in § I(B)(1) of his dissent, and the Court should have remanded with instructions for the court to further consider Diamond's as-applied First Amendment claims.

**B.  The Majority Opinion Substantially Narrows the Unfettered Discretion Doctrine.**

As both the majority and the dissent acknowledge "licensing schemes may be facially unconstitutional if [1] they have a close enough nexus to expression and [2] place 'unbridled discretion in the hands of a government official or agency.'" *Diamond* at 11 and 23 (quoting *City of Lakewood,* 486 U.S. at 757); see also *Lady J Lingerie,* 176 F.3d at 1362 ("[T]he cases show that virtually any amount of discretion beyond the merely ministerial is suspect.").

This principle, sometimes referred to as the Unfettered Discretion Doctrine, guards against two First Amendment evils. "First, the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused . . . . Second, the absence of express standards [*i.e.*, unbridled discretion] makes it difficult to distinguish, 'as-applied,' between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019-20 (9th Cir. 2009) (omission in original) (quoting *City of Lakewood*, 486 U.S. at 757-58 (1988)); see also *Kaahumanu*, 682 F.3d at 802.

In order to prevent those two evils, licensing scheme's directed at speech must provide "narrowly drawn, reasonable and definite standards" for granting, revoking, or suspending a license. *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 324 (2002) (quoting *Forsyth*, 505 U.S. at 133); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

The Majority narrowed the Unfettered Discretion Doctrine in a number of ways.

### 1. The Majority Failed to Acknowledge the Risk of Self-Censorship.

Critically, the majority ignored the first purpose of the unfettered discretion doctrine—to avoid the risk of self-censorship. Instead, the majority focused on the second purpose, *i.e.*, to avoid the difficulty in distinguishing between a licensor's legitimate denial or revocation of a permit and its illegitimate abuse of censorial power. The majority acknowledged that licensing schemes directed at speech must include "narrowly drawn, reasonable and definite standards" and even acknowledged that the "application of some of [the nuisance] provisions certainly requires some exercise of discretion." *Opinion* at *12.

Nevertheless, the majority made a number of assumptions in an attempt to shoehorn the broad nuisance definitions into First Amendment constraints. However, no amount of elbow grease can transform the prohibition against "[a]nything which is injurious to health […] or is indecent or offensive to the

senses" into a First Amendment compliant standard that is "narrowly drawn, reasonable and definite." Even if one overlays the nuisance definitions with an objective standard, a license holder still will have no idea what might put her at risk of license revocation. For example, what does it mean to refrain from operating a business in a manner that "a reasonable person" would find "substantially indecent," or in a manner that is "objectively" injurious to health? These definitions may be sufficient in the context of a nuisance abatement action, but they are not sufficiently narrow to meet First Amendment standards. Such broad definitions create the risk that entertainment venues will censor their own speech and avoid presenting controversial artists even if the discretion and power are never actually abused.

**2. The Majority Failed to Acknowledge That San Jose's Live Entertainment Licensing Scheme Is a Prior Restraint or That Prior Restraints Are Presumed Unconstitutional.**

Prior restraints take a variety of forms, with officials exercising control over different kinds of public places under the authority of particular statutes. "All, however, [have] this in common: they [give] public officials the power to deny use of a forum in advance of actual expression." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). "Prior restraints are not unconstitutional *per se*," however, "[a]ny system of prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity." *Id*. (citations omitted); *Forsyth*, 505 U.S. at 131-

32 ("A prior restraint is presumptively unconstitutional."). Maintaining the power to revoke a license to engaging in expressive activity is also a form of prior restraint. See *Kaahumanu, v.*682 F.3d at 802.

Here San Jose requires a license to present live entertainment and it is therefore a prior restraint subject to the presumption of unconstitutionality. Had the majority acknowledged that the challenged provisions are prior restraints and properly applied a presumption of unconstitutionality, they would have been compelled to come to a different conclusion.

### 3. The Majority Misunderstood the Role Public Nuisance Law Plays in San Jose's Licensing Scheme.

The Majority opinion tacitly acknowledges that the challenged definitions from California Civil Code §§ 3479 and 3480[4], inserted by reference into San Jose's entertainment licensing scheme, parallels language previously found to be unconstitutionally broad. *Opinion* at *13. However, the majority asserts that because the California Supreme Court ruled that the definition of public nuisance found in § 3479 is objective, public officials are sufficiently limited. *Id.* at *14, citing *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 605 (Cal. 1997). This argument ignores several important factors.

---

[4] SJMC §1.13.050 is addressed separately in the next section.

First, as the dissents points out, applying a reasonable person standard, "does not resolve the problem here, which is that the range of considerations that could count as 'indecent' or 'offensive to the senses' is too amorphously defined to adequately channel discretion in the First Amendment permitting context. Opinion at *27. "The type of activity that might be considered a public nuisance is vast." *People v. Aguilar-Benegas*, 2021 Cal. Super. LEXIS 153907, *10.

Moreover, San Jose's entertainment licensing scheme does not insert, by reference or otherwise, California's complex system of nuisance abatement law; it merely inserts the definitions found in §§ 3479 and 3480. Licensing officials making revocation or suspension decisions are charged with enforcing San Jose code provisions. In making those decisions, they are not obligated to follow the California Supreme Court's decisions relating to those definitions or any other aspect of nuisance law. Were they required to follow California nuisance law, the charges against Diamond would have failed from the beginning. See *Redevelopment Agency v. BNSF Ry.*, 643 F.3d 668, 674 (9th Cir. 2011) ("We cannot agree that such passive but-for causation is sufficient for nuisance liability to attach. Under California law, conduct cannot be said to 'create' a nuisance unless it more actively or knowingly generates or permits the specific nuisance condition."). Moreover, there is an ongoing and unresolved debate as to how to determine what offenses can be enjoined as public nuisances. See *People v. Lim*,

18 Cal. 2d 872, 877 (1941) ("The kinds of public nuisance at common law, however, where injunctions were granted on behalf of the sovereign included only those cases of public nuisance in which the sovereign's rights were given the same protection that would have been given to the rights of a private person. An action on behalf of the state, therefore, to enjoin activity which violates general concepts of public policy finds no basis in the doctrines of the common law.").

In any event, evidence in the record demonstrates that San Jose officials do not look beyond the definitions in §§ 3479 and 3480 when it comes to making licensing decisions. In support of its motion for summary judgement, San Jose submitted the Declaration of Sargent Galea whose duties included "regulatory enforcement of the City's Entertainment and other permits at nightclubs." SER 12. Galea testified that, "[c]ommon nuisances I have observed with nightclub crowds at closing time include: fights, overly intoxicated subjects, jaywalking, disorderly conduct, disturbances, loud music, and urinating in public." SER 14. This statement confirms not only the breadth of activity enveloped within the definition of public nuisance, but also the level of triviality of some of the covered activities. One can imagine these activities occur on most nights around most nightclubs, thus SJPD has a sufficient factual basis to support the revocation or suspension of any entertainment license anytime it chooses to exercise its discretion to do so. See *Miami Herald Pub. Co. v. Hallandale*, 734 F.2d 666, 675 (11th Cir. 1984)(finding

an ordinance that allowed city to approve or deny licenses to place news racks based on whether the applicant had violated other city ordinances to grant too much discretion, writing, "[t]his is an adjudicative function, and as such necessarily involves the exercise of considerable discretion. Accompanying such discretion is the opportunity to discriminate against a licensee on the basis of what the licensee intends to say, which in the context of licensing newspaper distribution raises the specter of prior restraint.").

Finally, prior Supreme Court case law makes it clear that unfettered discretion can exist even where the official is required to act reasonably. *Forsyth*, 505 U.S. at 135 n.12 ("The ordinance itself makes plain that the costs at issue are those needed for 'necessary and reasonable protection of persons anticipating or observing' the speech.").

### 4. The Panel misunderstands the effectiveness of a savings clause.

With regard to the alternative definition of nuisance from SJMC Section 1.13.050, the majority asserts that then generalness of the definition of nuisance is limited by a savings clause that provides, "[n]othing contained in this chapter shall prohibit persons from participating in activity which the city may not proscribe under the United States Constitution or the California Constitution." As Judge Collins correctly asserts in his dissent, "generic and high-level instruction to obey

the Constitution can hardly be said to provide sufficient guidance to constrain the permitting discretion of City officials." *Opinion* at p. 28. Other courts agree.

In *Battle v. City of Seattle*, the District court found a similar savings clause to be illusory. *Battle v. City of Seattle*, 89 F. Supp. 3d 1092, 1105 (W.D. Wash. 2015). In fact, the savings clause in Battle was even more specific, expressly referring to the First Amendment rather than generally referring to the US and California constitutions. *Id*. at 1102 (the City "may, under certain circumstances, be required to issue a permit (*e.g.*[,] if the First Amendment requires issuance of a particular permit).") San Jose's savings clause contains the same circular *permits-required-when-the-First-Amendment-requires-them* language that that unconstitutionally shifts the burden of justifying time, place, and manner restrictions on speech from the government to the permit applicant. Like the licensing scheme in *Battle*, the savings clause at issue here, "offer[s] no assistance in answering" what the Constitution requires. *Id*. at 1106. "A hypothetical ordinance declaring that a city 'has discretion to issue business licenses, but shall grant licenses when the First Amendment requires it' does not describe limits on the [city's discretion; it begs the question of what those limits are." *Id*.

In *CISPES v. FBI*, the Fifth Circuit considered a savings clause that read, "nothing contained in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the

United States" and found that, "such a provision cannot substantively operate to save an otherwise invalid statute, since it is a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments." *CISPES (Committee in Solidarity with People of El Salvador) v. FBI*, 770 F.2d 468, 474 (5th Cir. 1985). Applying the principle set forth in *CISPES*, a Texas Court found that applying such a savings clause "on a case-by-case basis would require people of ordinary intelligence -- and law enforcement officials -- to be First Amendment scholars. Arguably, people are always 'on notice' that constitutionally protected conduct is exempt from prosecution, and law enforcement officials could always look to the First Amendment to determine when a law should not be enforced because it would interfere with constitutionally protected activity. But, the mere existence of the First Amendment has never been held automatically to cure vagueness problems implicating First Amendment freedoms." *Long v. Texas*, 931 S.W.2d 285, 295 (Tex. Crim. App. 1996).

     **5.  Requiring Government Officials to Provide a Written Decision Does Not Cure the Problems Caused by Unfettered Discretion.**

If the reviewing courts are applying the same broad standards, any appeal is equally doomed. *Southworth*, 307 F.3d at 592 ("In the absence of criteria for issuing travel grants, it will be difficult if not impossible for the University's appeals process to determine whether the ASM Finance Committee reached the proper funding conclusion."). Indeed, in *Lakewood*, the mayor was required to

state the reasons for a denial, but the Supreme Court held that, "[s]uch a minimal requirement cannot provide the standards necessary to insure constitutional decisionmaking, nor will it, of necessity, provide a solid foundation for eventual judicial review. *Lakewood*, 486 U.S. at 771.

Diamond's experience here demonstrates why an appeal process will not always cure unfettered discretion. The chief of police issued a notice of intent to revoke based on a long list of grounds. ER 158-168. At the administrative hearing, Diamond was able to refute all of the alleged grounds based on objective standards except for one—using an unlicensed promoter. But Diamond was unable to defeat the accusation based on the broad prohibition against "conducting the permitted business in a manner that results in a public nuisance." ER 169-199.

Diamond appealed to the Appeal Board, a seven-member panel appointed by the City Council with one member required to be an attorney.[5] The Appeal Board must "limit[] its review to the administrative record and does not make any findings of law." ER 200-204. The burden is on the Appellant to demonstrate there is no substantial evidence to support the decision. *Id*. Diamond was able to meet that burden with regard to the fact-reliant unauthorized use of a promoter charge, but could not overcome the nuisance charge since it could not argue that a single

---

[5] On the night Diamond's appeal was heard, one member was absent and one member recused himself. Plaintiff does not know if any of the five members who ruled on the appeal were attorneys or otherwise trained in the law.

incident of gunshots fired by someone acting outside of Diamond's direction or control did not meet the legal definition of a public nuisance.

## IV.   CONCLUSION

For the reasons stated above, the Court should grant Diamond's petition for rehearing.

Dated: May 28, 2024                    Respectfully submitted,

*/s/ D. Gill Sperlein*

_____

D. Gill Sperlein
THE LAW OFFICE OF D. GILL SPERLEIN
Attorneys for Appellant,
Diamond SJ Enterprise

## CERTIFICATE OF COMPLIANCE RULE 32 (G)(1)

I am the attorney representing Appellant Diamond SJ Enterprise, Inc.

This brief contains 3796 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: May 28, 2024                    Respectfully submitted,

                                       */s/ D. Gill Sperlein*

                                       _____
                                       D. Gill Sperlein
                                       THE LAW OFFICE OF D. GILL SPERLEIN
                                       Attorneys for Appellant,
                                       Diamond SJ Enterprise

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: May 28, 2024          Respectfully submitted,

*/s/ D. Gill Sperlein*

_____

D. Gill Sperlein
THE LAW OFFICE OF D. GILL SPERLEIN
Attorneys for Appellant,
Diamond SJ Enterprise